Third case is number 20-12785, Willie and Nina Jackson v. Le Centre on Fourth, LLC. Ms. Greene. Good morning. May it please the Court. I represent Willie and Nina Jackson. This case is about the importance of Bankruptcy Rule 2002-C-3 when a bankruptcy plan would discharge an entity that goes beyond the debtor. In this case, the debtor did not follow the rule, Bankruptcy Rule 2002-C-3. The Jacksons, my client, did not have adequate notice of a third-party injunction contained within the plan and were therefore deprived of procedural due process, and we're asking that that third-party injunction not be enforced against our clients. Can I tell you what my presumptive view of the case is and tell you or ask you to dissuade me from it? Sure. Okay. So I agree with you provisionally that the notice in this case did not comply with Rule 2002-C-3 because I think the disclosure about these so-called third-party injunctions has to be in the notice. I think that's the only way to read the rule. Yes, sir. So I agree with you there. On the other hand, for due process concerns, your client received the documents that contained the third-party injunction language and the bar language, and the Supreme Court has indicated that when you receive those documents, due process is satisfied. In other words, the rule-based violation does not necessarily equate to a constitutional violation. You may have been deprived of rule-based notice, but you were given constitutional notice. So tell me where I've gone wrong. Your Honor, I think this rule was designed to make sure that parties had notice of third-party injunctions because they go beyond the scope of what Congress contemplated in the Bankruptcy Act. So in 2001, the Supreme Court amended Bankruptcy Rule 2002, which says in that notice document, you have to provide notice of this third-party injunction because they were concerned that parties were not notified of third-party injunction in a bankruptcy plan because it goes beyond what Congress contemplated. I agree with you. But there's a case from the Supreme Court, the Espinoza case from 2010, which suggests that when you receive actual notice of a filing, notwithstanding other procedural irregularities, the Constitution has been satisfied. So tell me why that case doesn't knock you out here. Well, Your Honor, I think the question is a due process analysis about adequate notice, and my clients didn't have adequate notice. And Your Honor, I think the factual circumstances of this case are important. My clients, they are personal injury plaintiffs in a Kentucky action. They obtained stay relief from the bankruptcy proceedings when they learned through the public realm that one of the entities in their personal injury action had filed for bankruptcy for stay relief so that they could pursue that party nominally to the extent of their insurance proceeds. To do that, the Jacksons waived their rights to participate in the bankruptcy plan and to benefit from the bankruptcy plan. And so, Your Honor, they had no reason to continue to follow the bankruptcy case or to be concerned about their rights with respect to the debtor because they had no right to benefit from the plan and had no right to participate in the proceedings. So it's unreasonable in our position and overly burdensome and would deprive them of procedural due process where they've waived those rights in the bankruptcy plan but would still be required. Why isn't this just a case of malpractice? I'm sorry? Just a case of malpractice. A case of malpractice.  The Jacksons lawyer. The Jacksons lawyer. That they didn't read the plan? They made, you're arguing they made a mistake in the Constitution that basically should bail them out. Well, Your Honor, I think that's a way of getting to the heart of the matter. Your Honor, I represent the Jacksons in their personal injury case in Kentucky. We hired a bankruptcy counsel. They can sue the insurance company, can't they? The Jacksons can sue the insurance company? Yes. Why couldn't they sue the insurance company? The insurance company is not a party to the bankruptcy proceeding. And you're saying that the insurance nominal claims against the release parties to pursue their insurance? I'm talking about just suing the insurance company. Which insurance company? And alleging that they're covered in this case and they caused the problem. Okay. But, Your Honor, I think that they were- I mean, that would solve the problem, wouldn't it? I don't know if it would solve the problem. I don't know- You don't think that would solve the problem the Jacksons have? The problem is that only, there's only insurance for some of the entities that were involved- I understand. That's the whole thing, right? Yeah. Well, Your Honor, that may be a problem that hasn't been adequately litigated in the case. Or to the extent that those entities don't have insurance, then of course they couldn't pursue those nominal claims because that party would be free to default and there would be no insurance. So, yes- Who were the ones that you were trying to pursue nominally? All of them. To obtain insurance coverage, if there was any? All of them, Your Honor. Because this is a personal injury action. We are not seeking their personal assets in the case that we- And that was- But not- So, your theory was that the insurance coverage that existed covered all of those entities for their acts or omissions? Yes, sir. Unless they don't have insurance. And so, Your Honor, that was our secondary argument. We, of course, believe we were deprived- my clients were deprived of due process. Yes. However, to the extent you reach the insurance issue, just like the Jacksons are allowed to proceed against the sinner, the debtor, to the extent of their insurance proceeds, it's our position that they should be allowed to file, you know, pursue those claims against AJS and Master Tenant to the extent they have insurance nominally and recover that way. And AJS doesn't have insurance, is that right? That is what we've been told by AJS, yes, ma'am. So, let me go back to this Espinoza case because, for me, that's the stumbling block with your theory of the case. So, when Espinoza involved a student loan scenario, obviously different than this, but in order to seek and obtain a discharge, the debtor, the borrower, had to file a summons and complaint within the bankruptcy proceeding to tell the creditor that the debtor was going to seek a discharge of student loan debt. In that case, the debtor did not file, did not submit or obtain a summons, did not file the complaint, yet when it submitted its bankruptcy plan, the bankruptcy plan said, we would like a discharge of the student loan debt. Plan goes through, gets confirmed, and the student loan debt gets wiped out. The creditor then comes back and says, hey, you can't do that. He never served a complaint. He never got a summons. He didn't follow the right procedures under the code to get this debt discharged. And the Supreme Court, addressing the due process part of the argument, said, once you've received it, that's it. Here's the language. Here, United, the creditor, received actual notice of the filing and contents of Espinoza's plan. This more than satisfied United's due process rights. Accordingly, on these facts, Espinoza's failure to serve a summons and complaint did not entitle United to relief under Rule 60b-4 on a due process theory. So here, I equate, and again, I may be mistaken about this, I equate Espinoza's failure to file a summons and complaint in that case to the bankruptcy court's failure here to provide adequate notice under 2002c-3. But yet in both cases, the interested party, in that case United, the creditor, in your case, your clients, received actual notice of the third party injunction that was going to issue. And so I want to know why there's a due process violation in light of Espinoza. Your Honor, I think that the Spring Valley case is what we rely on, which is that counsel for the Jacksons, the Jacksons themselves, had a right to assume that the bankruptcy rules were going to be followed, especially this specific rule. And different from the Espinoza case, at least from my understanding, is that the bankruptcy plan in this case did something that goes beyond what an ordinary bankruptcy would do. So the Jacksons would have had to read the 120-page plans, each iteration of the plan as those release parties changed each time to make sure that their rights weren't being implicated in a state court action in Kentucky and where the debtor didn't follow the rule designed to give them that exact notice. And we believe it is fair for their counsel to assume and understand that the rules are being followed. And, Your Honor, I think the facts of this situation make it all the more unfair because the Jacksons had waived their right to participate in the plan and did not benefit under the plan. I could find no other case that presented those circumstances. So Your Honor, that's why I believe that case is different and can be distinguished from this case. And Your Honor, to rule how and say that they did not have to follow the rule would essentially eliminate the rule and would encourage this sort of behavior where these third-party injunctions are not properly notified to people that would be implicated by that rule. All right. Thank you so much. You've saved your time for rebuttal. Mr. Irving. Good morning, Your Honors. Jim Irving of Denton's on behalf of the appellants, Police Center on 4th LLC, Police Center on 4th LLC. Your Honors, and may it please the Court, this appeal does present two issues. The first is, did the Jacksons receive sufficient notice? And they did. The second is, do the releases in the plan prevent even nominal claims against the insurers? And they do. Do you agree that the notice in this case, insofar as the rule was concerned, was inadequate? I don't necessarily agree with that, Your Honor. And you know, the funny thing is that neither the bankruptcy court nor the district court ever expressly says that the notice was okay. And that's because I think they know that the notice was deficient. And if you look at the language of the rule, the rule says, content of notice, if a plan provides for an injunction against conduct not otherwise enjoined under the code, and language bold, italic, a statement that the plan proposes an injunction, briefly describe the nature of the injunction and identify the entities that we've submitted to the injunction. And the notice that they're referring to is a notice that provides 28 days for filing objections and hearing to consider confirmation of the plan. That notice here was lacking all of that, right? I actually would argue that it doesn't. One of the things that's unique about notice in the Chapter 11 context of the plan and disclosure statement is that everyone is served with what the debtor proposes to send out. And the court makes a finding, is this adequate? And they approve an entire packet of information. That may be all the relevant for constitutional purposes. I'm talking about the first level analysis, which is the rule. And if the rule says the notice has to require the information, it doesn't mean that the supporting documents have to provide the information. It means the notice has to have it because that's what gives all interested parties the notice that something is going on. Oh my God, I better look at these 200 pages and see what's there because this notice is telling me that there's going to be a nonstandard injunction entered. And in this case, the notice did not have anything resembling what 2002 C-3 required. So tell me why I'm wrong. On your line. I know you're from the Southern District of Florida originally. The Southern District of Florida local court bankruptcy rules and provisions normally have the notice. What we've been talking about is the notice is the disclosure statement order. It's the order approving the disclosure statement and the other solicitation packages. Well, wait a minute though. The rule refers to the notice required under Rule 2002 B-2, which is the notice setting the confirmation, the hearing for the confirmation of the plan. Yes, Your Honor. So doesn't that contradict what you just said? Well, under the Southern District of Florida local rules and the way that the process worked in this case, the order approving the disclosure statement is also the notice of confirmation hearing, which is served out to all creditors and would follow that 2002 B-2. But that, okay, let's assume that that's accurate legally. That order approving the disclosure statement doesn't include the required language. The order does not require, I agree with that, Your Honor. You're dead on arrival. Well, Your Honor. Because the rule says the notice has to have the language. So however you interpret notice, it can't be the underlying documents. And that's because the people who crafted the bankruptcy rules want all interested parties to know when they get that notice, whether it's the order approving the disclosure statement or something separate, it says, hey, in these documents and what will be discussed at the hearing in 28 days is a nonstandard injunction that means X, Y, and Z. And then everybody has to say, oh, I better look and I better get prepared and I better file objections if I have any. That's the whole purpose. And that purpose was not accomplished here. That doesn't speak to the due process issue, but it speaks to the rule issue. And I haven't seen anything in the papers, no cases from anywhere else that convinced me that my reading of the rule is wrong. I believe that there are only two cases that directly address the issue. There is the case Skolnick v. Skolnick out of the District of New Jersey where the court found that the plan and disclosure statement and the order approving them was sufficient without 2002c language included, the bold underlined italics, in the notice itself. We relied on that case. It's obviously outside the Eleventh Circuit. There's also a case that's been cited by the appellant, the Jacksons, from the District of Massachusetts. We think that case is distinguishable. It criticizes the notice because it does not contain the bold underlined italics language. There the court denied confirmation on a variety of other issues, both with taxes and the treatment as well as just the nature of the third party release. That's a District of Massachusetts case which is only cited by the Jacksons in their reply brief but not the original brief. Okay, let's assume that you and I are going to respectfully disagree on that first point. Absolutely, Your Honor. So tell me about the due process contention. We agree with you regarding Espinoza. There is notice that's reasonably calculated to give everyone an opportunity to determine what to do on this plan and to figure out what's going on with the releases. Your Honor, the context is important here. Similar to the Seaside or the S.E. Holdings case, this case was a death struggle. I represented the Al J. Schneider Company, which was a creditor, minority interest. I tried to move to dismiss the bankruptcy case. I lost that case before Judge Wray. Bankruptcy case proceeded. We had months-long mediation. We eventually decided that we would be effectively a plan sponsor, acquire the asset. During that period of time, Mr. Jackson and only Mr. Jackson, not Mrs. Jackson, filed a lift-stay motion. I did not object to that lift-stay motion and the Debtor's Council entered an agreed order modifying the stay and allowing Mr. Jackson to proceed with the insurance litigation against the debtor only. There's nothing that says... Help me a little bit with Kentucky law. Kentucky law allowed a direct action against the insurer at that early stage or required you to go after the alleged wrongdoer and then go after the insurance company once liability was determined? I think that it would have required at least a nominal claim against the debtor and then proceeding only to insurance. Okay. But significantly, what happened is we came to a resolution. We met all of the Dow Corning factors, which are synthesized by this circuit in Munford. There's an identity of interest and there's this substantial contribution, what ended up becoming a full pay plan. There's nothing as regards to Mrs. Jackson that happened before, but we wanted to make sure that everyone had notice in the case. And all parties, because quite frankly, they didn't trust each other in the bankruptcy case and the banks didn't trust anyone, it was critical that there be third-party releases and that everyone move forward with a clean history and there's no recrimination of what was happening in litigation regarding the debtor uninvolved with the Jacksons in Kentucky in the bankruptcy case. And there was added to the notice list two mailings, one for Nina Jackson, one for Willie Jackson of most of the pleadings in the case to State Court Litigation Council in Kentucky as well as to Bankruptcy Council. Bankruptcy Council was receiving electronic notices. So on most pleadings that are relevant here, four copies are sent to the Jacksons, Bankruptcy Council and State Court Council, two to State Court Council, two to Bankruptcy Council. None of those are responded to. And the Jacksons even admit in their reply brief, there's a really important admission I think on page 16, they say, quote, there was no doubt that a plan confirmation order made by its breath supersede a say order. And what I think the Jacksons needed to recognize is the plan matters. The confirmation order matters. Why am I receiving hundreds of pages of documents in the mail multiple times? Why am I getting all these notices? Oh yeah, we filed an appearance to participate in the case. Now we're just ignoring it. Had they looked at it, there was a real easy answer here. This is a full pay case. What does that mean in the context of what we have here? All creditors in full. Another party... Right, except that doesn't include the Jacksons because they had withdrawn themselves from the bankruptcy proceeding. Not the Jacksons, Mr. Jackson. Okay, Mr. Jackson. But Mrs. Jackson had her claim as well and she could have asserted one. GEICO... So it's not... So full paid is a term of art in the bankruptcy world. It's not a full pay, pay case. Well, everyone... Right, it's a full pay except for the Jacksons for different reasons, which may be legitimate and valid, but not everybody got paid. Mr. Jackson chose to file lift-stay relief on his own. No one encouraged him to do that. I wouldn't... I just didn't object. Then later, all other creditors who filed proofs of claim in the case were paid, including GEICO, which was one of the insurers in this Jackson litigation under the fact pattern there's a car that's hit. And GEICO files a proof of claim and my clients cut a check to GEICO for the full amount of the proof of claim. Mrs. Jackson was not... Her spousal claim was not impacted. And there's nothing that prevented in the stay relief order the Jacksons from participating in the plan. That's why we're sending them all this notice. And bankruptcy counsel should have realized that. I think state court litigation counsel should have realized that. They didn't file the withdrawal from the Chapter 11 case. They're still getting notices. Your Honor, you raised the question regarding malpractice. I don't know. I think that there are potential questions there, but we continue to provide notice to everyone. There are multiple hearings. There are multiple versions of all documents. As the district court and Judge Wray at the bankruptcy court seized upon, the beginning of the disclosure statement does include bold, underlined italics, read this in its entirety. A review of the table of contents discusses release language. There's lots of references in the Jacksons brief that these documents are long. This is a 350-word sentence. I admit that this is a complicated structure. It was a very complicated Chapter 11 case, tens of millions of dollars of secured debt, corporate governance issues, unsecured debt, indemnifications, hotel flags. It was complicated. It took a lot of language and a lot of lawyering. But just because something's long doesn't mean that you can ignore it. And I think that that's what happened here. Moving on, we do think it's crystal clear what happened. We talked about the Skolnick case. We think that Espinoza, even if we didn't follow the actual language of Bankruptcy Rule 2002C3, that that would control. We agree with that. There's no due process right that's being taken away here. The second issue is, does the release bar even nominal claims against insurers? We think that it does. We agree with the Bankruptcy Court and the District Court that this is really a 105A issue. It's not a 549 issue. I think that, Your Honor, the Eleventh Circuit decided that pretty clearly in Mumford. You know, nothing in Florida, which was a 524 case, addresses, quote, the authority of bankruptcy courts to issue a non-consensual, non-debtor release. And we agree with what Judge Ray said, both in his opinion in our case, but also in the Levitt & Sons case, that to allow nominal claims against insurers guts the nature of these third-party releases. Because, especially here, there's a factual finding regarding the notices and the indemnification provisions. And once one claim gets asserted, because of the financial entities that are related to U.S. Bank that own the shares and master tenant, this trigger of indemnification round and round starts, which would be very destructive to the debtor and undermine that reorganization. Who, what did you say, because I forget now, what did you say happened with Geico? What were they paid? Oh, I think they were paid $30,000 or $40,000. It was much less than the Jacksons. For what? Their car was hit. The facts of the case are that. Oh, they insured the vehicle for the auto rental company. They insured a different vehicle, I think. So Mr. Jackson, and it is terrible what happened with Mr. Jackson. Mr. Jackson was at the premises. A valet company that was, by a third-party driver, hit him. The valet driver lost control of the rental company, and I believe hit a vehicle across the street. My memory serves me, Geico was the insurer for the vehicle across the street. Of the other vehicle, okay. Now, Your Honor, Judge Jordan, one thing that you're right about is, if the Jacksons, when Tina Jackson had filed a claim, there probably would have been claims litigation, right? There probably would have been claims litigation, but it would have been dealt with on the front end. And that was really critical for the parties here. For the Alger Schneider Company as the buyer, for the debtor, for Mr. Batchelor, who's this other party who used to own the hotel, for U.S. Bank and its subsidiaries, third-party releases as found by Judge Wray, as affirmed by Judge Singel, and as set forth in these declarations in the case describing the third-party releases, which were also served, they had to have them. They had to have this fresh start because, essentially, no one trusted the other parties about what had happened in the past. And they didn't want contracts and subcontractors like the valet company that someone else had in the future operations of the case. Okay. All right, Mr. Irving. Thank you very much. Thank you. Ms. Green. So, tell me about Mrs. Jackson, or Ms. Jackson, given that she never filed a claim in bankruptcy. What notice was she entitled to? Your Honor, I think it's a red herring, this issue with Ms. Jackson. The question of whether or not she was entitled to stay relief under the order that was agreed to is not before the court, and I don't think has any bearing on the notice. She would be in – Well, if she's not a participant in the bankruptcy proceedings as a creditor with a claim or something else, why is she entitled to notice? Well, because she would be implicated by that third-party injunction. So, the bankruptcy court has to figure out what non-parties are impacted and send them notice if they've never filed a proof of claim or never made themselves part of the bankruptcy proceeding? Your Honor, there's a rule that was created when 2002C3 was created, which is – I believe it's 3017F, which deals with this idea that there may be people outside, non-creditors, what they call parties of interest, may be implicated by these third-party injunctions and requires the exact same notice that 2002C3 requires. So Your Honor, the Supreme Court was very intentional about enacting 2002C3 because they want to make sure that these third-party injunctions, which have only become more and more commonplace, are people who are going to be impacted by them have notice of them. So hopefully that answers your question. And Your Honor, I think that brings me to one of the points I wanted to make in rebuttal is these are extraordinary injunctions. These go beyond what Congress contemplated under the Bankruptcy Act, and that's why they are entitled to this notice in the 2002B2 notice, so that parties know that this extraordinary injunction is going to be within the plan. And Mr. Irving makes a big point of they really wanted to make sure my clients had notice. I find that to be hard to believe. Mr. Irving's firm represents AJS and La Center in the state court action in Kentucky. And both, all of these parties continue to litigate the case during the bankruptcy. So while they were putting in these third-party injunctions into the plan after confirmation of the plan, all of the parties continue to litigate the case. In fact, his law firm showed up at depositions, asked questions at depositions on behalf of AJS, who they now claim is a released party under this injunction. So Your Honor, they had every opportunity to apprise the Jacksons of this third-party injunction, and they didn't do it, and they knew the Jacksons didn't know about it. And the moment they filed a motion to dismiss in the state court action is when we sought relief in the bankruptcy court. Now, if your clients had been sent, let's say, five pages of bold, capitalized, highlighted language which said, hey, the plan in this case includes these third-party injunctions and releases, would due process have been satisfied? Absolutely. If it had been in that 2002B notice, that six-page document. No, not the notice. Not the notice. If they had been in the document sent to them. Sure. Absolutely. You know, if... So then the due process argument comes down to the fact that, as you put it in your brief, that the language concerning the third-party injunctions and releases were sort of buried and included in 200-plus pages of documents. Yes, sir. I would agree with you that this is a due process as looked on a case-by-case basis. Had someone mentioned in a deposition to... How do we try that issue? How would the court try the issue on how many pages were involved or what sort of type and all that sort of thing? The whole trial would come, I suppose, we have experts? Sure. You have expert witnesses. One expert would say that wouldn't notify anybody and the other one said it surely would notify somebody. So we add up the pages and you just said that if it's two or three pages, you're out. Your Honor, I think the question is, did my clients have, was it reasonable for them to have notice? I understand, but it's a fact issue, isn't it? It is. I think due process is always... That's your argument. Your argument is the fact issue. Your Honor, I think due process is always looked at on a case-by-case basis and so yes, in this case, my clients were deprived of due process. I'm out of time unless the court has other questions.  No, we understand the argument. Thank you very much, Ms. Green. Thank you. Thank you. Take your time in settling in, but let me go ahead and call the last case. It's number...